IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  No. 18-CR-20058-JTF-tmp |
| **LAMAR CLANCY,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Lamar Clancy's Motion to Suppress. (ECF Nos. 27 & 32.) The court held an evidentiary hearing on October 30, 2018. (ECF No. 36.) For the following reasons, it is recommended that Clancy's motion be denied.

**I.   PROPOSED FINDINGS OF FACT**

The following proposed findings of fact are based on the testimony of Memphis Police Officer John Pellett and Memphis Police Lieutenant Byron Hardaway, both of whom credibly testified at the evidentiary hearing, and body camera footage from Officer Pellett and Memphis Police Officer Cheney,[1] which the parties jointly

---

[1] Although Officer Cheney's name is referenced throughout the hearing transcript, her first name is not identified in the record. The portion of the body camera footage submitted as part of Exhibit 1 attributed to Officer Cheney is apparently misidentified as belonging to a "Shamika Smith." The court will refer to this

submitted and portions of which were played at the hearing.

On December 8, 2017, at approximately 5:53 p.m., officers from the Memphis Police Department responded to a robbery at a Boost Mobile store at the corner of Millbranch Road and Shelby Drive in Memphis, Tennessee, involving multiple suspects. (Hr'g Tr. at 12; 18.) Officers on the scene described one of the suspects as wearing red shoes, red pants, a gray sweatshirt, a hoodie or black ski mask, and black gloves. (Id. at 18.) The station dispatch stated that gun shots were fired inside the business, from both the victims of the robbery and the robbery suspects. (Id. at 46-47.)

While officers were still investigating the Boost Mobile robbery, Officer Pellett responded to a scene of a hit-and-run accident at Raines and Millbranch Roads. (Id. at 9.) The witness advised that his vehicle had been struck by a black Dodge Challenger and that the front end of the Dodge hit his vehicle. (Id. at 9-10.) Based on his investigation of the hit and run, Officer Pellett determined that the Dodge would have left the scene heading westbound. (Id. at 10.) As Officer Pellett was gathering information on the hit and run, he received a dispatch call notifying him that a man with a gunshot wound had been dropped off at Methodist South Hospital ("Methodist South"). (Id. at 9.) Methodist South is located westbound from the hit-and-run scene. (Id. at 10.) Officer Pellett left the hit-and-run scene and drove

---

portion of Exhibit 1 as the Cheney Body Camera.

to Methodist South to investigate the shooting. (Id.) Officer Pellett testified that it is department policy to investigate shootings reported by hospitals to ascertain who shot the victim. (Id. at 10-11.) Officer Pellett arrived at Methodist South at about the same time as Officer Cheney, another Memphis Police Officer who had just left the scene of the Boost Mobile robbery. (Id. at 12.) The officers conferred with a security guard, who advised that the gunshot victim had been dropped off by individuals in a black Dodge Charger with front-end damage.[2] (Id. at 13; Ex. 1, Pellett Body Camera at 3:45-4:05.) The officers also conferred with hospital staff to attempt to secure video footage of the shooting victim's arrival. (Hr'g Tr. at 13.) Hospital staff advised that the footage would not be available until the following day. (Id. at 32; Ex. 1, Pellett Body Camera at 14:30-38.)

The officers proceeded through the hospital to an operating room where the victim, later identified as the defendant, Lamar Clancy, was being treated. (Hr'g Tr. at 14.) The entry to the room was partially obstructed by a curtain and the room was occupied, at various points, by up to seven doctors and nurses. (Ex. 1, Pellett Body Camera at 5:45; Cheney Body Camera at 22:39-59.) Clancy was lying on a hospital bed and although not fully clothed, he was covered with a hospital gown. (Hr'g Tr. at 22-23;

---

[2]Officer Pellett later stated that while hospital staff said that the specific Dodge model was a Charger, it could also have been a Challenger. (Ex. 1, Pellett Body Camera at 6:30-38.)

-3-

50; Ex. 1, Pellett Body Camera at 5:27-38; Ex. 1, Cheney Body Camera at 22:39-59.) A pile of clothing was lying on the floor, which the hospital staff advised belonged to Clancy. (Hr'g Tr. at 23; Ex. 1, Pellett Body Camera at 5:35-50; Ex. 1, Cheney Body Camera at 22:52-23:08.) The clothing was not in a bag and was plainly visible to everyone in the room, including the officers. (Hr'g Tr. at 23; 50-51; Ex. 1, Pellett Body Camera at 5:35-50; Ex. 1, Cheney Body Camera at 22:52-23:08.) Officer Pellett testified that he could see what appeared to be red shoes, red sweatpants, a gray sweatshirt, a ski mask and black gloves. (Hr'g Tr. at 15, 18.) Officer Pellett confirmed via radio that the clothing matched the description of one of the Boost Mobile robbery suspects. (Id. at 24; 26.) One member of the medical staff advised the officers that Clancy was in "critical" condition and would be airlifted to Regional One Hospital for more extensive medical treatment. (Id. at 17-18; 25-26; Ex. 1, Cheney Body Camera at 27:00-15.)

Lieutenant Hardaway later arrived at Methodist South in response to a call from Officer Pellett. (Hr'g Tr. at 18-19.) Lieutenant Hardaway testified that it is his standard practice to investigate hospital-reported shootings and collect evidence relating to gunshot victims. (Id. at 48.) Lieutenant Hardaway went into the room and observed Clancy lying on the bed. (Id. at 50; Ex. 1, Pellett Body Camera at 14:35-47.) Lieutenant Hardaway testified that he observed a gray shirt, red pants, and red and

-4-

black shoes, and that this clothing matched the description of the clothing worn by one of the Boost Mobile robbery suspects. (Hr'g Tr. at 50-51.)  Lieutenant Hardaway placed a call to Crime Scene officers to come tag and collect the clothing as possible evidence of a crime. (Id. at 19; 33.)  Because Lieutenant Hardaway had determined that Clancy was a suspect in the Boost Mobile robbery, he placed Clancy under arrest at that time. (Id. at 54.)  Officer Cheney was then assigned to go to Regional One and await Clancy's arrival from the airlift. (Id. at 20, 31, 54.)  Officer Pellett and Lieutenant Hardaway remained at Methodist South with the clothing until Crime Scene officers arrived to photograph and collect the clothing. (Hr'g Tr. at 33-34; 53; Ex. 1, Pellett Body Camera at 50:38-58:58.)  Shortly after Clancy was airlifted out, hospital staff began cleaning the bed. (Hr'g Tr. at 34.)

On February 22, 2018, a grand jury indicted Clancy on one count of aiding and abetting a robbery in violation of 18 U.S.C. §§ 1951 and 1952, and one count of using a firearm in commission of a robbery in violation of 18 U.S.C. §§ 924(c) and 922. (ECF No. 1.)

## II. PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV.  Warrantless searches and seizures are "'per se unreasonable under the Fourth Amendment –

-5-

subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). The plain view doctrine is relevant here.

Police officers may seize an item without a warrant under the plain view doctrine if: (1) the item seized is in plain view, (2) the item's incriminating character is immediately apparent, (3) the officer is lawfully in the place from where the item can be plainly seen, and (4) the officer has a lawful right of access to the item. United States v. Mathis, 738 F.3d 719, 732 (6th Cir. 2013) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)); see also United States v. Galaviz, 645 F.3d 347, 355 (6th Cir. 2011) ("Under the plain-view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.") (internal quotations omitted). "'If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.'" United States v. Barclay, 578 F. App'x 545, 550 (6th Cir. 2014) (quoting Horton, 496 U.S. at 133).

**A. Plain View**

The officers saw Clancy's clothing lying on the ground of the hospital room, in plain view. The clothing was not hidden or stored in a bag, and its view was not obstructed in any way. Thus,

-6-

the first prong is satisfied.

**B.   Incriminating Character**

To be seized under the plain view doctrine, the incriminating character of the seized item must be immediately apparent. Galaviz, 645 F.3d at 355.  An item need not be contraband to be incriminating.  See United States v. Davis, 690 F.3d 226, 238 (4th Cir. 2012).  "The seizure of an apparently innocuous item may be proper when law enforcement have probable cause to believe it is connected to illegal activity."  United States v. Lewis, 2015 WL 1884375, at *4 (W.D. Ky. Apr. 24, 2015) (citing Mathis, 738 F.3d at 733).  "'[P]robable cause is a flexible, common-sense standard.  It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.'"  Mathis, 738 F.3d at 732 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).

Here, the officers knew that Clancy was in the emergency room because he had been shot.  It was reasonable for the officers to believe that clothing, worn during a shooting, would be useful evidence of that crime.  Accordingly, the officers had probable cause to believe that Clancy's clothing was useful evidence of, at the very least, the shooting.  Furthermore, the clothing matched the description of clothing worn by one of the suspects of the

Boost Mobile robbery, the officers knew that shots had been fired during that robbery, Clancy was left at the hospital by a black Dodge (which matched the description of the hit-and-run vehicle) and the vehicle left the hit-and-run scene in the direction of the hospital. This information was likewise sufficient to establish probable cause to believe that the plainly-visible clothing was useful evidence of the Boost Mobile robbery as well. The incriminating character of the clothing was thus immediately apparent.

**C.  Lawful Presence**

The parties make only passing reference to whether the officers' presence in the hospital operating room violated the Fourth Amendment. See Morgan v. Fairfield Cty., Ohio, 903 F.3d 553, 563 (6th Cir. 2018) ("The plain-view exception, however, applies only when 'the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed.'") (quoting United States v. Taylor, 248 F.3d 506, 512 (6th Cir. 2001)). "The burden lies with the defendant, as the one claiming Fourth Amendment protection, to show that the officer's presence was unlawful and that he enjoyed a reasonable expectation of privacy in the premises." United States v. Howard, No. 1:10-CR-121-ODE, 2011 WL 1459375, at *8 (N.D. Ga. Apr. 15, 2011) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). Courts have found that a defendant retains a lessened expectation of privacy in a

-8-

hospital trauma room, such that police presence there is not unlawful under the Fourth Amendment. See Howard, 2011 WL 1459375, at *9; United States v. Davis, 657 F. Supp. 2d 630, 637-38 (D. Md. 2009), *aff'd*, 690 F.3d 226, 234 (4th Cir. 2012) (finding detective did not need a warrant to enter hospital's emergency room and was thus lawfully present); see also United States v. John, No. CR-12-08082-001-PCT-JAT, 2014 WL 2863661, at *8 (D. Ariz. June 24, 2014) (finding no expectation of privacy in hospital room where defendant was not yet under arrest but was under heightened police supervision).

Under the specific facts presented in this case, the court finds that the officers' mere presence in the hospital operating room did not violate Clancy's Fourth Amendment rights. To the extent that Clancy relies on United States v. Neely, 345 F.3d 366 (5th Cir. 2003), to establish that the officers' presence was unlawful, such reliance in misplaced. In Neely, the defendant, a gunshot victim who was suspected of carrying out an armed robbery, was transported to the trauma unit of a hospital. Id. at 368. The defendant's clothing was inventoried, placed in a bag, and removed to a separate storage room by hospital personnel. Id. At the police officer's request, hospital personnel turned over the bag containing the defendant's clothing, which the police then seized without a warrant. Id. The court's discussion of the plain view doctrine turned primarily on the lawful access prong; the Fifth

-9-

Circuit did not address whether the officers' presence in the defendant's hospital room was lawful, because the clothing was not recovered from that hospital room. The only case that Clancy cites on this point is thus distinguishable. Accordingly, Clancy has not carried his burden of demonstrating that the officers' presence was unlawful.

**D.   Lawful Access**

The difference between "lawful presence" and "lawful access" is that "the former refers to where the officer stands when she sees the item, and the latter to where she must be to retrieve the item." Boone v. Spurgess, 385 F.3d 923, 928 (6th Cir. 2004); see also Davis, 690 F.3d at 234. Thus, the lawful access requirement "is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises in the absence of exigent circumstances." Boone, 385 F.3d 928; see also Davis, 690 F.3d at 234; Rodriguez v. State, No. 01-17-00352-CR, 2018 WL 6053568, at *6 (Tex. App. Nov. 20, 2018).

As explained above, the officers were lawfully present in the hospital room as part of their shooting investigation, and therefore had lawful access to the clothing lying in plain view in the same room in the ordinary course of their investigation. Clancy's apparent reliance on Neely as to this point is likewise misplaced. There, the Fifth Circuit explained that the plain view doctrine did not apply because the officers "did not have a lawful

-10-

right of access to the storage room or the plastic bag in which the hospital stored Neely's clothing." Neely, 345 F.3d at 371.  Here, the clothing was inside the same hospital room in which the officers were lawfully present.  The officers thus had lawful access to the clothing.  Because all four requirements are satisfied, the officers' seizure of the clothing was proper under the plain view doctrine.[3]

### III. RECOMMENDATION

For the above reasons, it is recommended that Clancy's motion to suppress be denied.

Respectfully submitted,

        s/ Tu M. Pham
        TU M. PHAM
        United States Magistrate Judge

        December 19, 2018
        Date

---

[3] In the briefs and at the evidentiary hearing, the parties disputed whether the seizure of Clancy's clothing was justified under the exigent circumstances exception to the warrant requirement. Because the plain view doctrine applies, the court need not consider this alternative argument. See, e.g., United States v. True, No. 15-cr-55-JMH-REW-1, 2016 WL 128150, at *2- 3 & 3 n.1 (E.D. Ky. Jan. 11, 2016) (relying solely on plain view to justify warrantless seizure); United States v. Sierra-Rodriguez, No. 10-20338, 2102 WL 1339079, at *6 (E.D. Mich. Apr. 17, 2012) (same); United States v. Watkins Street Project, LLC, No. 1:09-cr-144, 2012

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**

---

WL 6789313, at *13-14 (E.D. Tenn. Oct. 28, 2010) (same).